# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **Brian Holte,** *individually and on behalf of a class of similarly situated persons,*<br><br>        *Plaintiff,*<br><br>        v.<br><br>**TrueAccord Corp.,**<br>**Douglas William Isaacson,**<br>**Minto Development Corporation,** *and*<br>**Benhti Economic Development Corporation,**<br><br>        *Defendants.* | Case Number:<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Brian Holte** ("**Mr. Holte**"), on behalf of himself and all similarly situated individuals, by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **TrueAccord Corp.** ("**TrueAccord**"), **Douglas William Isaacson** ("**Isaacson**"), **Minto Development Corporation** ("**MDC**"), and **Benhti Economic Development Corporation** ("**Bedco**") (collectively, the "**Defendants**"), stating as follows:

## DESCRIPTION OF THE CASE

1.      This is an action against TrueAccord for violations of the **Fair Debt Collection Practices Act**, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and against TrueAccord, MDC, Bedco, and Isaacson for violations of the **Florida Consumer Collection Practices Act**, Section 559.55, Florida Statutes, *et seq.* ("**FCCPA**"), and Florida's **Civil Remedies for Criminal Practices Act** ("**CRCPA**"), Section 772.101, Florida Statutes, *et seq.*

2.      Florida law prohibits usury and caps interest rates at 18% annually.[1] Interest rates of 45% and higher are deemed a felony. *See* Section 687.071(3), Florida Statutes.  Loans made at usurious rates are *void ab initio* under Florida law.

3.      Isaacson, through MDC and Bedco, operates an online lending business called "Minto Money."

4.      Minto Money lends to Florida residents at rates exceeding 700% annually – more than 30 times the maximum lawful rate.

5.      Isaacson, MDC, and Bedco generally collect these loans themselves; however, they assign certain debts for collection to TrueAccord, a *Debt Collector* as defined by the FDCPA and the FCCPA.  TrueAccord then attempts to collect these loans, despite their triple-digit interest rates.

---

[1] Certain exceptions permit interest up to 30% annually; however, such exceptions are inapplicable to the present matter. *See, e.g.,* Fla. Stat. § 516.031.

6.     TrueAccord serves as a collection agency for a large number of lenders charging usurious interest rates, including Sky Cash USA, Golden Valley Lending, and Minto Money, and is thus aware of the illegality of these loans in Florida.

## JURISDICTION AND VENUE

7.     Subject matter jurisdiction for Mr. Holte's federal claims arises under the FDCPA, 15 U.S.C. §1692k(d), and 28 U.S.C. § 1331.

8.     This Court has supplemental jurisdiction for Mr. Holte's state law claims pursuant to 28 U.S.C. § 1367.

9.     TrueAccord is subject to the provisions of the FDCPA, and all of the Defendants are subject to the provisions of the FCCPA and the CRCPA, and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes, and Fed. R. Civ. P. 4(k).

10.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Holte

11.     **Mr. Holte** is a natural person residing in the City of Palm Harbor, Pinellas County, Florida.

12.     Mr. Holte is a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

### TrueAccord

13.     **TrueAccord** is a Delaware corporation with a primary business address of **16011 College Blvd, Suite 130, Lenexa, KS 66219**.

14.     TrueAccord is registered to conduct business in the State of Florida, where its Registered Agent is **Incorp Services, Inc., 17888 67th Ct. N., Loxahatchee, FL 33470.**

15.     TrueAccord is a *Debt Collector* within the meaning of the FDCPA and the FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that it uses e-mail, an instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

16.     TrueAccord is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA9903295**.

17.     As a licensed CCA, TrueAccord knows or should know the requirements of both the FDCPA and the FCCPA.

### Bedco

18.     **Bedco** is an economic development corporation purportedly organized under the laws of the Native Village of Minto and has a primary address of **205 Lakeview Dr., Suite 7, Minto, AK 99758.**

### MDC

19.     **MDC** is an Alaskan corporation with a registered mailing address of **615 Bidwell Ave., Suite 303, Fairbanks, AK 99701.**

20.     **MDC's** registered agent is **Roxanne Frank, 938 Dennis Rd., North Pole, AK 99705.**

21.     **MDC** claims to be the owner of an online payday lending website Minto Money, which operates from www.mintomoney.com.

### Isaacson

22.     **Isaacson** is the CEO of MDC and maintains an office at **615 Bidwell Ave., Suite 303, Fairbanks, AK 99701**.

23.     Isaacson is believed to reside at **1003 Shirley Turnaround, North Pole, AK 99705**. According to his online resume on LinkedIn, his job as CEO entails overseeing engagement in "innovative growth sectors" which include "lending." **SEE PLAINTIFF'S EXHIBIT A.**

## FACTUAL ALLEGATIONS

24.     On or about April 24, 2020, Mr. Holte obtained a loan in the principal amount of $1,000.00 from Minto Money (the "**Minto Money Loan**").

25.     The Minto Money Loan carried an annual interest rate of 764.76%, meaning that Mr. Holte was to pay $5,243.83 over a nine-month period for a $1,000 loan. **SEE PLAINTIFF'S EXHIBIT B.**

26.     The principal balance of the loan was electronically transmitted to Mr. Holte's bank account in Palm Harbor, Florida, via an *Automated Clearing House* ("**ACH**") credit.

27.     Thereafter, Minto Money collected the Minto Money Loan through ACH withdrawals from Mr. Holte's bank account.

28.     Mr. Holte paid over $4,189.58 in under nine months for the $1,000.00 he borrowed. **SEE PLAINTIFF'S EXHIBIT C.**

29.     Despite this, Minto Money claimed he still owed $1,111.36 (the "**Debt**").

30.    The Debt arose from a transaction which was primarily for family, personal, and household purposes, specifically it arose from a payday loan which was used for personal purposes and expenses, and meets the definitions of *Debt* under the FDCPA and the FCCPA, 15 U.S.C. § 1692a(5) and Section 559.55(6), Florida Statutes, respectively.

31.    At all times relevant, Mr. Holte was a Florida resident.

32.    Mr. Holte has never visited Minto tribal land in Alaska.

33.    Recently, federal appellate courts have held that a transaction takes place, for jurisdictional purposes, where a consumer is located when they click "submit" while visiting an online portal provided by a Native American tribe.  *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 968 (9th Cir. 2018) ("… the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.")

34.    Thus, pursuant to current legal decisions, Mr. Holte's loan occurred in the State of Florida and is governed by the laws of Florida.

35.    Section 687.071(3), Florida Statutes states, "any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, commits <u>a felony of the third degree</u>." (<u>Emphasis added.</u>)

36.     Pursuant to Section 687.071(7), Florida Statutes, no loan made in violation of this statute is an enforceable debt in the State of Florida.

37.     Any person who willfully makes such a loan, in addition to being subject to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

38.     Indeed, even the recovery of the principal balance of loans made at usurious interest rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

39.     Mr. Holte's Minto Money Loan, with its 764.76% APR, was thus void *ab initio* and unenforceable in Florida.

40.     <u>Any</u> amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021

41.     Neither Minto Money, Minto Financial, nor any of the Defendants were ever licensed by the Florida Office of Financial Regulation as a consumer finance company, nor are any of the Defendants a federally chartered bank.

42.     Minto Money relies on choice-of-law provisions and a spurious claim of *tribal sovereign immunity* to lend to Florida consumers at interest rates that violate Florida's usury statutes.

43.     However, an entity must function as a *legitimate* "arm of the tribe" in order to assert tribal immunity as a defense. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

44.     Minto Money is purportedly owned and operated by Minto Financial, which, in turn, claims to be owned by The Native Village of Minto (the "**Minto Tribe**"), a small, isolated, financially-strapped American Indian tribe with approximately 223 enrolled members, located about 75 miles northwest of Fairbanks, Alaska.

45.     Minto Money's website states:

Minto Financial dba Minto Money is a wholly owned subsidiary of Benhti Economic Development Corporation ("BEDCO"), a sovereign economic arm, enterprise and instrumentality of, and created under the laws of and for the benefit of, the Native Village of Minto, a federally recognized sovereign American Indian tribe in Alaska

46.     Minto Financial and Bedco, in turn, operate under a "tribal lending license" signed by *Shane Thin Elk* ("**Thin Elk**"), the *Commissioner* of the Minto Financial Services Licensing & Regulatory Commission. **SEE PLAINTIFF'S EXHIBIT D.**

47.     Just so, the Commission has issued only one license in its existence: the one granted to operate Minto Money.

48.     The Minto Financial Services Licensing & Regulatory Commission was created immediately before issuing this lone license.

49.     The Commission places no restrictions on interest rates charged to consumers, unlike Alaska state law, which limits payday loans to $500 and caps fees at $75 for such loans.

50.     Thin Elk is an attorney who previously lived in Omaha, Nebraska, and formerly practiced law with Fredericks Peebles & Morgan LLP, a law firm with a significant practice devoted to, per its website, "PROTECTING Tribal Sovereignty." He is now the owner of Thin Elk Law in Green Bay, Wisconsin, where he resides.

51.     Upon information and belief, Thin Elk is not a member of the Minto Tribe; rather, he is an enrolled member of the Sioux Tribe of South Dakota – located thousands of miles from Alaska.

52.     Thin Elk bills himself as an expert in "rent-a-tribe" matters, an arrangement where non-tribal entities control and operate a lending operation but present a Native American tribe façade as the straw owner to claim tribal sovereign immunity as a defense to any prosecution.

53.     For example, Thin Elk was a speaker at a Tribal Employment Rights & Law Conference in April 2014 in Prior Lake, Minnesota. The program for the seminar summarized his speech as "Structuring the system: Essential elements for workable Tribal codes; selecting or creating effective grievance and dispute resolution bodies and processes; special considerations for partnering with non-Tribal entities for commercial enterprises." **SEE PLAINTIFF'S EXHIBIT E.**

54.     In sum, the Minto Financial Services Licensing & Regulatory Commission issued a single license, to Minto Money, through its Commissioner, who is not a member of the Minto Tribe, but has expertise in setting up rent-a-tribe agreements with non-tribal investors.

## Minto Money is Not Beneficially Owned or Operated by the Minto Tribe

55.     Minto Money operates under a "rent-a-tribe" scheme – the main function of the Native American tribe is to appear, on paper, as owning the lending operation so that the true non-tribal lender may use the specter of sovereign immunity as a way to ward off the consumers who they victimize, as well as state and federal regulatory authorities.

56.     Despite the tribe's minimal involvement, all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

57.     One of the individuals behind the rent-a-tribe scheme in this matter is Isaacson, a past president of Credit Services, Inc., which was an affiliate of Trans Union, LLC.

58.     Isaacson was born in 1957 in Seattle, Washington, and was not born a member of the Minto Tribe.

59.     Isaacson currently lives in North Pole, Alaska, about 12 miles south of Fairbanks.

60.     As part of the rent-a-tribe scheme, Isaacson, via MDC, obtains credit reports in the name of Minto Money.

61.     Isaacson then contracts with other non-tribal members who perform underwriting analytics, customer service, collection duties, and all other related business functions.

62.     On information and belief, MDC employs no members of the Minto Tribe.

63.     Bedco, the purported parent company of MDC, is also controlled by Isaacson.

64.     Domain Name Registration records show that Bedco's only website, www.bedco.us, is registered to Isaacson. **SEE PLAINTIFF'S EXHIBIT F.**

65.     When aggrieved consumers complain about Minto Money to consumer advocacy organizations such as the Better Business Bureau ("**BBB**"), Isaacson responds personally to the complaints, identifying himself as the "General Manager" of Minto Financial. **SEE PLAINTIFF'S EXHIBIT G.**

66.     On information and belief, Isaacson, apparently without any oversight from the tribe, often makes adjustments to the interest rates charged by Minto Money to consumers who complain of loansharking.

67.     Minto Money claims to operate a lending enterprise making millions of dollars of consumer loans to consumers nationwide, from offices located at 205 Lakeview Dr., Suite 7, Minto, AK 99758.

68.     Despite the suite number designation, the building located at 205 Lakeview Drive does not contain any offices divided into suites.

69.     The building is used for school and senior lunch programs, community meetings, and village council operations.

70.     No call center, data center, or offices relating to any lending enterprise are found at this address.

71.     The web server from which mintomoney.com operates has an IP address of 35.192.114.177, which corresponds to a physical location in Virginia. **SEE PLAINTIFF'S EXHIBIT H.**

72.     Indeed, the idea that any company relying on e-commerce to facilitate large numbers of transactions at 205 Lakeview Drive in Minto is dubious, at best, since the area lacks high-speed internet service providers, offering only DSL service at speeds of just 2 megabits per second.

## Minto Money Operates from Kansas, Not Alaska

73.     Calls to the only customer service phone number listed on Minto Money's website, 844-446-4686, were answered by a non-tribal employee working at a call center in Overland Park, Kansas.

74.     The non-tribal employee identified himself as "Kevin" and confirmed that no call center or business operations existed in Alaska.

75.     Upon information and belief, no members of the Minto Tribe live in the Overland Park, Kansas, area.

76.     Indeed, the Minto Tribe has no substantive involvement in the operation of Minto Money. Working capital to fund loans is provided by Isaacson and his investors and calls are taken by Isaacson's contractors in Kansas, thousands of miles away from the Minto Village.

77.     The Minto Tribe's Financial Services Licensing & Regulatory Commission is a paper-thin veneer established in an attempt to create the false impression that the tribe is, somehow, involved in the lending business.

78.     Similarly, the Commissioner is not even himself a member of the Minto Tribe and is an attorney who bills himself as an expert in advising Native American tribes how to rent out the appearance of sovereign immunity for profit.

79.     Isaacson and the other non-tribal investors receive the vast majority of the payday loan profits while the Minto Tribe receives a tiny fraction of overall revenue, about 2%, for playing the role of straw owner of the business.

80.     On information and belief, Isaacson, through MDC and BEDCO, actually controls Minto Money.

81.     Isaacson, MDC and BEDCO each received a significant portion of the $4,189.58 paid by Mr. Holte towards the Minto Money Loan.

## TrueAccord's Collection Efforts

82.     In or around December 2020, Minto Money placed, transferred, or otherwise forwarded the Debt to TrueAccord for collection.

83.     Shortly thereafter, TrueAccord began emailing Mr. Holte, attempting to collect the Debt.

84.     At this time, TrueAccord alleged that $1,111.36 was owed by Mr. Holte.

85.     This $1,111.36 represents only usurious interest and fees, as Mr. Holte had already paid back the original principal amount of the loan more than three times over.

86.     At no point did TrueAccord disclose that the Minto Money loan was null, void, and unenforceable against Mr. Holte under Florida law. To the contrary, TrueAccord claimed the loan was valid and enforceable against him.

87.     Mr. Holte made two payments to TrueAccord, of $259.32 each, on December 30, 2020, and January 26, 2021. **SEE PLAINTIFF'S EXHIBIT I.**

88.     TrueAccord continued to email Mr. Holte after he made the payments.

89.     On May 17, 2021, TrueAccord emailed Mr. Holte, stating, "I'm sure we can help you resolve your outstanding balance with Minto Money if you just work with us." **SEE PLAINTIFF'S EXHIBIT J.**

90.     At no point in any of its emails, nor anywhere on TrueAccord's website, did TrueAccord disclose that Florida law prevents Mr. Holte from being sued for the Debt, as the underlying loan was void.

91.     Several of TrueAccord's emails offered to "settle" the Minto Money Debt.

92.     The failure to disclose that a consumer cannot be sued for a debt is materially misleading to an unsophisticated consumer, especially when paired with prominent language advertising a "settlement" offer since an unsophisticated consumer would believe the debt collector was offering to settle an account for a particular amount in lieu of legal action. *See Baez v. LTD Fin. Servs., L.P.,* No. 17-13842 (11th Cir. Dec. 7, 2018), *Tatis v. Allied Interstate, LLC,* 882 F.3d 422, 425, 428-30 (3d Cir. 2018); *Pantoja v. Portfolio Recovery Associates, LLC,* 852 F.3d 679, 684, 687 (7th Cir. 2017); *Daugherty v. Convergent Outsourcing, Inc.,* 836 F.3d 507, 509 (5th Cir. 2016); *Buchanan v. Northland Group, Inc.,* 776 F.3d 393, 395, 399-400 (6th Cir. 2015); *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1020 (7th Cir. 2014).

93.     Indeed, TrueAccord failed to disclose that the alleged Debt was not owed under Florida law.

94.     Upon receiving TrueAccord's email, Mr. Holte believed that the purported Debt was legally enforceable against him, and that TrueAccord would report the account as a collection tradeline to the major credit bureaus, *e.g.,* Equifax, Experian and Trans Union.

95.   The failure to disclose that a debt from a loan shark like Minto Money is not legally owed under Florida law materially disadvantages a consumer.

96.   Beyond this, the attempted collection of any debt which was *void ab initio* and not actually owed is a *per se* violation of the FDCPA's prohibitions against the use of false and misleading collection tactics.

97.   TrueAccord collects debts for numerous payday lenders, many of which falsely claim to be owned by various Native American tribes. TrueAccord has been sued multiple times for its involvement in the collection of illegal payday loan debts but continues to accept new debts from online payday lenders, despite knowing the illegal provenance of their accounts.

98.   TrueAccord's website and emails to Mr. Holte were *Communications* as defined by the FDCPA, 15 U.S.C. § 1692a(2), and the FCCPA, Section 559.55(2), Florida Statutes and were in connection with the collection of the Debt.

## CLASS ACTION ALLEGATIONS

99.   Plaintiff brings this matter as a Class Action, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), on behalf of himself and the following Classes:

**All natural persons residing in the State of Florida:**

**(a)     who, within one year of the date of the filing of this complaint, received collection correspondence, including any**

email, phone call, or other communication, from TrueAccord regarding any alleged Minto Money debt being owed, while failing to state that such debt was unenforceable ("FDCPA Class"),

(b)     who within two years of the date of the filing of this complaint, received collection correspondence, including any email, phone call, or other communication, from TrueAccord regarding any alleged Minto Money debt being owed, while failing to state that such debt was unenforceable ("TrueAccord FCCPA Class"),

(c)     who within five years of the date of the filing of this complaint, received collection correspondence, including any email, phone call, or other communication, from TrueAccord regarding any alleged Minto Money debt being owed, while failing to state that such debt was unenforceable, or paid any usurious interest, fees, or similar, concerning debts alleged owed to Minto Money ("True Accord CRCPA Class"),

(d)     who within two years of the date of the filing of this complaint, received collection correspondence, including any email, phone call, SMS message, or other communication, from Minto Financial regarding any alleged Minto Money

debt being owed, while failing to state that such debt was unenforceable ("Minto Financial FCCPA Class"), or

(e)      who within five years of the date of the filing of this complaint, received collection correspondence, paid any usurious interest, fees, or similar to Minto Financial ("Minto Financial CRCPA class").[2]

100.    **Numerosity.   Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical, as Plaintiff believes that there are at least one thousand (1,000) similarly situated persons.  Minto Money markets itself heavily and makes a considerable number of loans to Florida consumers.  Although the precise number of Class members is unknown, the names and addresses of potential Class members are identifiable through documents and business records maintained by TrueAccord, Isaacson, MDC, and Bedco.

101.    **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the Classes and which predominate over questions affecting any individual class member.  Specifically, these common questions include, without limitation:

---

[2] Plaintiff reserves the right to amend the definition of the Classes based on subsequent discovery or legal developments.

(a)     Whether the collection of interest and fees from loans made to Florida consumers at interest rates exceeding 700% annual interest by Minto Money violates the FCCPA and the CRCPA;

(b)     whether TrueAccord's collection, and attempted collection, of unpaid "collection balances" which resulted from loans made to Florida consumers at interest rates exceeding 700% annual interest by Minto Money violates the FDCPA; and,

(c)     whether TrueAccord's collection, and attempted collection, of unpaid "collection balances" from usurious loans which were void *ab initio* without disclosing that the loans are not legally enforceable in Florida or legally owed violates the FDCPA.

102.    **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Minto Money makes loans to Florida consumers at rates vastly exceeding the maximum lawful rate. TrueAccord uses a series of pre-written email messages to collect these usurious debts from Florida consumers, and, on information and belief, the emails received by Mr. Holte are identical to the emails received by thousands of other Florida consumers.  Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that he seeks for absent Class members.

103.     **Adequacy of Class Representation.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over one thousand consumer cases under the FDCPA and the FCCPA, as well as many other cases under the Fair Credit Reporting Act, Telephone Consumer Protection Act, Rosenthal Fair Debt Collection Practices Act, and other similar consumer protection statutes. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

104.     **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FDCPA, the FCCPA and the CRCPA. Members of the Class do not have an interest in pursuing individual claims against the Defendants as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments

concerning the Defendants' practices.  Moreover, management of this action as a Class Action will not likely present any difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

105.    Absent a Class Action, the Class members will continue to have their rights violated and will continue to suffer monetary and other damages.

106.    Defendants' actions are generally applicable to the entire Class, and accordingly, the relief sought is appropriate with respect to the entire Class.

107.    Mr. Holte has specifically assigned his right under the applicable statutes to attorney fees and costs to the undersigned firm representing him.

108.    All conditions precedent to this action have occurred, been satisfied, or waived.

## COUNT I
## VIOLATIONS OF THE FDCPA - *TrueAccord*

109.    Mr. Holte adopts and incorporates paragraphs 1 – 108 as if fully restated herein.

110.    TrueAccord violated **15 U.S.C. § 1692e(2)(a)** when it made false representations regarding the character or legal status of the Debt by falsely representing that the Debt was enforceable despite it being unenforceable as usurious pursuant to Section 687.071(3), Florida Statutes.

111.    TrueAccord violated **15 U.S.C. § 1692e and 1692e(10)** when it used false, deceptive, and misleading representations in connection with the collection of a debt by falsely representing that the Debt was legally enforceable when it was usurious and unenforceable pursuant to Section 687.071(3), Florida Statutes.

112.    TrueAccord violated **15 U.S.C. § 1692e(5)** when it threatened action which could not legally be taken, to wit, that it would continue to attempt to collect the Debt from Mr. Holte, a Florida resident, when such action would be illegal under Florida law.

113.    TrueAccord violated **15 U.S.C. § 1692f(1)** when it attempted to collect an amount which included an illegally applied interest rate of 764.76% per annum, when such fees are felonious under Florida criminal statutes. *See* Section 687.071(3), Florida Statutes.

114.    TrueAccord's actions were willful and intentional and representative of its normal business practices.

**WHEREFORE**, Plaintiff and Class pray for relief as follows:

a.      An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b.      An award of statutory and actual damages for the Class members;

c.   An award of pre-judgment and post-judgment interest as provided by law;

d.   An award of attorneys' fees and costs; and,

e.   Such other relief as the Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCCPA - *TrueAccord*

115.   Mr. Holte adopts and incorporates paragraphs 1 – 108 as if fully restated herein.

116.   TrueAccord violated **Section 559.72(9), Florida Statutes**, when it attempted to enforce a debt against Mr. Holte – and did enforce such debt – which it knew was illegitimate and unenforceable due to the application of an annual interest rate in excess of 700 percent.

117.   TrueAccord violated **Section 559.72(9), Florida Statutes**, when it asserted the existence of a legal right which does not exist – to wit, the collection of the Debt from Mr. Holte, and the collection of interest on a loan made at over 700 percent annually – despite the Debt being rendered null and void pursuant to Section 687.071(7), Florida Statutes.

118.   TrueAccord's actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Mr. Holte and profiting from it.

119.    TrueAccord knew of the illegal nature of the Debt as a result of multiple prior lawsuits filed against it for substantially similar collection attempts.

120.    Indeed, when TrueAccord sent its May 17, 2021, email attempting to collect the remainder of the Minto Money loan from Mr. Holte, it was actively facing another class action lawsuit for collecting on a similar "rent-a-tribe" lender, Sky Trail Cash, which also makes loans at more than 700% annual interest.

121.    By its conduct, TrueAccord is liable for the above-stated violations of the FCCPA.

**WHEREFORE**, Plaintiff and Class pray for relief as follows:

a.    An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b.    An award of statutory, actual and punitive damages for the Class members;

c.    An award of pre-judgment and post-judgment interest as provided by law;

d.    An award of attorneys' fees and costs;

e.    Injunctive relief prohibiting TrueAccord from collecting any debt related to Minto Money; and,

f.    Such other relief as the Court deems just and proper.

## COUNT III
## <u>VIOLATIONS OF THE FCCPA – *Isaacson, MDC, and Bedco*</u>

122.   Mr. Holte adopts and incorporates paragraphs 1 – 108 as if fully restated herein.

123.   Isaacson, MDC, and Bedco violated **Section 559.72(9), Florida Statutes**, when they attempted to enforce a debt against Mr. Holte which they knew or should have known was illegitimate and unenforceable due to the application of an annual interest rate in excess of 700 percent.

124.   Isaacson, MDC, and Bedco violated **Section 559.72(9), Florida Statutes**, when they asserted the existence of a legal right which does not exist, to wit, collecting usurious interest on a $1,000 loan which carried an interest rate of 764.76% per annum, vastly exceeding the maximum lawful interest rate in Florida. No such right to collect a debt of this nature exists, and, to the contrary, the collection of this Debt was expressly prohibited by Florida law.

125.   The fact that Isaacson, MDC, and Bedco engaged in an elaborate hide-the-shell game to obfuscate the true ownership of Minto Money establishes that Isaacson, MDC, and Bedco were well aware that the debts were illegal, as evidenced by their attempts to make it *appear* that a Native American tribe was collecting the Debt, and not them.

126.   The actions of Isaacson, MDC, and Bedco were willful, intentional, and done for the purpose of collecting an unenforceable debt from Mr. Holte.

127.    By their conduct, Isaacson, MDC, and Bedco are liable for the above-stated violations of the FCCPA.

**WHEREFORE**, Plaintiff and Class pray for relief as follows:

a.    An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b.    An award of statutory, actual, and punitive damages for the Class members;

c.    An award of pre-judgment and post-judgment interest as provided by law;

d.    An award of attorneys' fees and costs;

e.    Such other relief as the Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE CRCPA – *TrueAccord*

128.    Mr. Holte adopts and incorporates paragraphs 1 – 108 as if fully restated herein.

129.    TrueAccord violated **Sections 772.103(1) and 772.103(2), Florida Statutes**, when it, with criminal intent, received proceeds derived directly from the collection of an unlawful debt – the Minto Money Loan to Mr. Holte – and used such proceeds in the continued operation of an ongoing business enterprise.

130.    TrueAccord frequently collects debts for lenders substantially similar to Minto Money, including Sky Trail Cash, Sky Cash USA, Golden Valley Lending, and others. None of these entities are licensed to lend in Florida, and they all assess unlawful interest rates of more than 700% annually.

131.    TrueAccord received payment for illegal, usurious interest directly from Mr. Holte and retained at least 35% of those funds.

132.    TrueAccord violated **Section 772.103(3), Florida Statutes**, when it participated in an enterprise with the Minto Tribe, as well as Isaacson, MDC, and Bedco, and other non-tribal investors, through the collection of usurious loans in the State of Florida, including Mr. Holte's loan from Minto Money, and obtained proceeds from such loan.

133.    TrueAccord violated **Section 772.103(4), Florida Statutes**, when it conspired with the Minto Tribe, as well as Isaacson, MDC, and Bedco, and other non-tribal investors, to collect unlawful debts from Florida consumers, namely Minto Money loans made at interest rates well in excess of 45% per annum, including Mr. Holte's loan, all under the guise that the loans were lawful and legally enforceable.

134.    The intent of TrueAccord is clear in that it knowingly engaged in a pattern whereby it collected, and continues to collect, unlawful debt for dozens of online loan sharks who make loans to consumers well in excess of 45% interest per

annum, in violation of Section 687.071(3), Florida Statutes, all while claiming such loans are lawful and legitimate, when it knows this not to be true.

135.    The actions of TrueAccord were knowingly unlawful, willful, intentional, and done with the express intention of deceiving Mr. Holte and taking money from him that it had no legal right to take.

136.    By its conduct, TrueAccod is liable for the above-stated violations of the CRCPA.

**WHEREFORE**, Plaintiff and Class pray for relief as follows:

a.    An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b.    An award of treble actual damages for the Class members, or, alternately, a minimum of $200 per class member;

c.    punitive damages for the Class members;

d.    An award of pre-judgment and post-judgment interest as provided by law;

e.    An award of attorneys' fees and costs; and,

f.    Such other relief as the Court deems just and proper.

## COUNT V
## VIOLATIONS OF THE CRCPA – *Isaacson, MDC, and Bedco*

137.    Mr. Holte adopts and incorporates paragraphs 1 – 108 as if fully restated herein.

138.    Isaacson, MDC, and Bedco violated **Sections 772.103(1) and 772.103(2), Florida Statutes**, when they, with criminal intent, received proceeds derived directly from the collection of an unlawful debt – the Minto Money loan to Mr. Holte – and used such proceeds in the continued operation of an ongoing business enterprise.

139.    Isaacson, MDC, and Bedco received payment for illegal, usurious interest directly from Mr. Holte, and also received a portion of the funds collected by TrueAccord.

140.    Isaacson, MDC, and Bedco violated **Section 772.103(3), Florida Statutes**, when they participated in an enterprise with the Minto Tribe, as well as the Overland Park, Kansas, call center, and other non-tribal investors, through the making of usurious loans in the State of Florida, including the Minto Money loan to Mr. Holte, and obtained proceeds from such loan.

141.    Isaacson, MDC, and Bedco violated **Section 772.103(4), Florida Statutes**, when it conspired with the Minto Tribe, as well as TrueAccord, the Overland Park, Kansas, call center, and other non-tribal investors, to lend to Florida consumers at interest rates well in excess of 45%, in clear violation of

Florida law, and then proceeded to collect these unlawful debts, including the Minto Money Loan, all under the guise of tribal sovereign immunity.

142.   Isaacson, MDC, and Bedco violated **Section 772.103(4), Florida Statutes**, when they endeavored to violate subsections (1) through (3) by conspiring with the Minto Tribe, as well as the Overland Park, Kansas, call center, and other non-tribal investors to place the illegal debt for collection with TrueAccord, knowing that TrueAccord would make repeated collection attempts and falsely imply in those attempts that the Debt was legally enforceable, when it was not.

143.   The intent of Isaacson, MDC, and Bedco is clear in that they knowingly engaged in a pattern whereby they made loans well in excess of 45% interest per annum, in violation of Section 687.071(3), Florida Statutes, and then proceeded to collect these unlawful debts and obtain proceeds therefrom, all while operating under a scheme pursuant to which they would claim tribal sovereign immunity so as to avoid liability under Florida's usury statutes.

144.   Isaacson, MDC, and Bedco took actions in furtherance of this conspiracy when they issued the Minto Money loan to Mr. Holte, proceeded to collect the loan, and then assigned the remaining balance to TrueAccord for collection.

145.    The actions of Isaacson, MDC, and Bedco were knowingly unlawful, willful, intentional, and done with the express intention of deceiving Mr. Holte and taking money from him that they had no legal right to take.

146.    By their conduct, Isaacson, MDC, and Bedco are liable for the above-stated violations of the CRCPA.

**WHEREFORE**, Plaintiff and Class pray for relief as follows:

a.    An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b.    An award of treble actual damages for the Class members, or, alternately, a minimum of $200 per class member;

c.    punitive damages for the Class members;

d.    An award of pre-judgment and post-judgment interest as provided by law;

e.    An award of attorneys' fees and costs; and,

f.    Such other relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Mr. Holte hereby demands a jury trial on all issues so triable.

Respectfully submitted this **September 17, 2021**, by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com

1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A      LinkedIn Profile of Doug Isaacson, Accessed May 16, 2020

B      Plaintiff's Loan Agreement with Minto Money, Excerpt

C      Plaintiff's Pay History Regarding Minto Money Loan

D      Minto Financial's Lending License

E      Overview of Tribal Employment Rights & Law Conference, April 2014

F      Domain Name Registration for bedco.us, Record Date: December 19, 2018

G      Isaacson Responses to Consumer Complaints on BBB Regarding Minto Money

H      Physical Location for Servers of mintomoney.com

I       Plaintiff's Payment Summary to TrueAccord Regarding Minto Money Loan

J      TrueAccord's Email to Plaintiff, May 17, 2021