# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **BRIAN HOLTE** and **WILLIAM KIDD, JR.,** *individually and on behalf of a class of similarly situated persons,* | |
| *Plaintiffs,* | Case Number: 8:21-cv-02215-WFJ-TGW |
| v. | |
| **TRUEACCORD CORP., MINTO FINANCIAL,** *d/b/a* **MINTO MONEY, DOUGLAS WILLIAM ISAACSON, MINTO DEVELOPMENT CORPORATION,** *and* **BENHTI ECONOMIC DEVELOPMENT CORPORATION,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW the Plaintiffs, **Brian Holte** ("**Mr. Holte**") and **William Kidd, Jr.** ("**Mr. Kidd**") (jointly, "**Plaintiffs**"), on behalf of themselves and all similarly situated individuals, by and through their attorneys, and complain of the Defendants, **TrueAccord Corp.** ("**TrueAccord**"), **Minto Financial**, doing business as Minto Money ("**Minto Financial**"), **Douglas William Isaacson** ("**Isaacson**"), **Minto Development Corporation** ("**MDC**"), and **Benhti Economic Development Corporation** ("**BEDCO**") (collectively, the "**Defendants**"), stating as follows:

## DESCRIPTION OF THE CASE

1.      This is an action against TrueAccord for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and against TrueAccord, Minto Financial, MDC, BEDCO, and Isaacson for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et seq.* ("**FCCPA**"), and Florida's *Civil Remedies for Criminal Practices Act* ("**CRCPA**"), Section 772.101, Florida Statutes, *et seq.*

2.      Isaacson, Minto Financial, MDC and BEDCO (together the "**Lender Defendants**") are part of an illegal lending enterprise that seeks to avoid state usury laws through the "Rent-A-Tribe" model.  The Lender Defendants operate https://mintomoney.com/ ("**Minto Money**"), a website through which these Defendants issue online loans to consumers located in 42 states nationwide, including Florida.[1]

3.      Loans issued through Minto Money charge interest exceeding 500% annually – rates which are illegal in most states, including Florida. Indeed, Florida law prohibits usury and caps interest rates at 18% annually.[2]  Interest rates of 45%

---

[1] Minto Money's website claims that it does not lend to consumers located in Alaska, Arkansas, Connecticut, District of Columbia, New York, Pennsylvania, Vermont, Virginia, West Virginia.

[2] Certain exceptions permit interest up to 30% annually; however, such exceptions are inapplicable to the present matter. *See, e.g.,* Fla. Stat. § 516.031.

and higher are deemed a felony. *See* Section 687.071(3), Florida Statutes.  Loans made at usurious rates are *void ab initio* under Florida law.

4.    Minto Money claims to be owned and operated by Minto Financial, a wholly owned subsidiary of BEDCO, who in turn claims to be a "sovereign economic arm, enterprise and instrumentality of, and created under the laws of and for the benefit of, the Native Village of Minto, a federally recognized sovereign American Indian tribe in Alaska."  *See https://mintomoney.com/*.[3]

5.    By asserting tribal ownership, and through the use of choice-of-law and arbitration provisions designed to strip consumers of any remedies they may have under state law, the Lender Defendants seek to avoid state usury laws, such as Florida's.  However, the notion that Minto Money is operated primarily by, and for the benefit of the Minto Tribe is a farce, as the lending scheme was the product of Isaacson and MDC, who are the primary beneficiaries of Minto Money.

6.    The Lender Defendants generally collect Minto Money loans themselves; however, certain debts are assigned to TrueAccord, a *Debt Collector* as defined by the FDCPA and the FCCPA, for collection.  TrueAccord then attempts to collect these loans, despite their triple-digit interest rates.

7.    TrueAccord serves as a collection agency for a large number of lenders charging usurious interest rates nationwide, including Sky Cash USA,

---

[3] The Native Village of Minto is referred to throughout as the "Minto Tribe."

Golden Valley Lending, and Minto Money, and is thus aware of the illegality of these loans.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction for Plaintiffs' federal claims arises under the FDCPA, 15 U.S.C. § 1692k(d), RICO, 18 U.S.C. § 1965, and 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction for Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10. This Court may also exercise diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2).

11. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## THE PARTIES

### Plaintiffs

12. **Mr. Holte** is a natural person residing in the City of Palm Harbor, Pinellas County, Florida.

13. **Mr. Kidd** is a natural person residing in the City of Wesley Chapel, Pasco County, Florida.

14. Plaintiffs are each a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3) and Section 559.55(8), Florida Statutes, respectively.

**TrueAccord**

15.    **TrueAccord** is a Delaware corporation with a primary business address of **16011 College Blvd, Suite 130, Lenexa, KS 66219**.

16.    TrueAccord is registered to conduct business in the State of Florida, where its Registered Agent is **Incorp Services, Inc., 17888 67th Ct. N., Loxahatchee, FL 33470.**

17.    TrueAccord is a *Debt Collector* within the meaning of the FDCPA and the FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that it uses e-mail, an instrumentality of commerce, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

18.    TrueAccord is registered with the Florida Office of Financial Regulation as a ***Consumer Collection Agency*** ("**CCA**"), holding license number **CCA9903295**.

19.    As a licensed CCA, TrueAccord knows or should know the requirements of both the FDCPA and the FCCPA.

**BEDCO**

20.    **BEDCO** is an economic development corporation purportedly organized under the laws of the Native Village of Minto.

21.    BEDCO has a primary address of **205 Lakeview Dr., Suite 7, Minto, AK 99758.**

## Minto Financial

22.    **Minto Financial** is a wholly owned subsidiary of BEDCO and operates from the same address, **205 Lakeview Dr., Suite 7, Minto, AK 99758.**

## MDC

23.    **MDC** is an Alaskan corporation with a registered mailing address of **615 Bidwell Ave., Suite 303, Fairbanks, AK 99701.**

24.    **MDC's** registered agent is **Roxanne Frank, 938 Dennis Rd., North Pole, AK 99705.**

## Isaacson

25.    **Isaacson** is the CEO of MDC and maintains an office at **615 Bidwell Ave., Suite 303, Fairbanks, AK 99701**.

26.    Isaacson is believed to reside at **1003 Shirley Turnaround, North Pole, AK 99705**.

27.    According to Isaacson's online resume on LinkedIn, his job as CEO of MDC entails overseeing engagement in "innovative growth sectors" which include "lending." **SEE PLAINTIFFS' EXHIBIT A.**

## FACTUAL ALLEGATIONS

28.     On or about April 24, 2020, Mr. Holte obtained a loan in the principal amount of $1,000.00 from Minto Money ("**Holte's Loan**").

29.     On or about July 14, 2021, Mr. Kidd obtained a loan in the principal amount of $2,520.00 from Minto Money ("**Kidd's Loan**").

30.     Holte's Loan carried an annual interest rate of 764.76%, meaning that Mr. Holte was to pay $5,243.83 over a nine-month period for a $1,000 loan. **SEE PLAINTIFFS' EXHIBIT B.**

31.     Kidd's Loan carried an annual interest rate of 516.09%, meaning that Mr. Kidd was to pay $15,105.38 over a 14-month period for a $2,520.00 loan. **SEE PLAINTIFFS' EXHIBIT C.**

32.     The principal balances of the loans were electronically transmitted to Plaintiffs' respective bank accounts in Florida, via *Automated Clearing House* ("**ACH**") credits.

33.     Minto Money thereafter collected the loans through ACH withdrawals from Plaintiffs' bank accounts.

34.     Mr. Holte paid $4,189.58 in under nine months for the $1,000.00 borrowed. **SEE PLAINTIFFS' EXHIBIT D.**

35.     Despite this, Minto Money claimed that Mr. Holte still owed $1,111.36 on his loan.

36. Mr. Kidd paid $3,304.42 in less than three months for the $2,520.00 borrowed, after which his bank flagged the transactions as fraudulent and ceased the withdrawals. **SEE PLAINTIFFS' EXHIBIT E.**

37. Minto Money thereafter claimed that Mr. Kidd could pay off the balance for $3,123.60.

38. Minto Money attempted to collect this balance from Mr. Kidd via numerous phone calls, each of which asserted that he could "settle" the remaining balance.

39. Plaintiffs' loans, and the debts stemming therefrom, arose from transactions which were primarily for family, personal, and household purposes, specifically payday loans, the proceeds of which were used for personal purposes and expenses, and therefore meet the definitions of *Debt* under the FDCPA and the FCCPA, 15 U.S.C. § 1692a(5) and Section 559.55(6), Florida Statutes, respectively.

## Minto Money's Loans Occur Where the Consumer is Located

40. Plaintiffs have never visited the Minto Tribe's land in Alaska.

41. Plaintiffs took out their loans online, while physically present in Florida.

42. The proceeds from the loans were transferred into Plaintiffs' respective bank accounts, both located in Florida.

43.     The loans therefore occurred in the State of Florida and are governed by the laws of Florida.

44.     Section 687.071(3), Florida Statutes, states, "any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, commits <u>a felony of the third degree</u>." (<u>Emphasis added.</u>)

45.     Pursuant to Section 687.071(7), Florida Statutes, no loan made in violation of this statute is an enforceable debt in the State of Florida.

46.     Long-standing public policy in Florida confirms the impossibility of the alleged debt.

47.     Thus, any person who willfully makes such a loan, in addition to being subject to criminal sanctions, forfeits the right to collect payment for the loan. *Id.*

48.     Indeed, even the recovery of the principal balance of loans made at usurious interest rates is impermissible under Florida law.

49.     The purpose of Florida's usury statutes is to protect the needy borrower by penalizing the unconscionable money lender.

50.     Minto Money's loans vastly exceed the maximum lawful interest rate in Florida.

51.    The making, and collection, of Minto Money's loans constitute felonies pursuant to Section 687.071(3), Florida Statutes.

52.    Minto Money's loans were thus void *ab initio* and unenforceable in Florida.

53.    Minto Money's loans are therefore "unlawful debts" as defined by Fla. Stat. § 772.102(2) and 18 U.S.C. § 1961(6).

54.    <u>Any</u> amount repaid on an illegal, usurious debt deemed *void ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan.

55.    Neither Minto Money, Minto Financial, nor any of the Defendants were ever licensed by the Florida Office of Financial Regulation as a consumer finance company, nor are any of the Defendants a federally chartered bank.

56.    Minto Money relies on choice-of-law provisions and a spurious claim of *tribal sovereign immunity* to lend to Florida consumers at interest rates that violate Florida's usury statutes.

### The Lender Defendants' Rent-A-Tribe Scheme

57.    Minto Money is purportedly owned and operated by Minto Financial, a subsidiary of BEDCO, who in turn claims to be owned by the Minto Tribe.

58.    The Minto Tribe is a small, isolated, financially-strapped American Indian tribe with approximately 223 enrolled members, located about 75 miles northwest of Fairbanks, Alaska.

59.    Minto Financial and BEDCO operate under a "tribal lending license" signed by *Shane Thin Elk* ("**Thin Elk**"), the *Commissioner* of the Minto Financial Services Licensing & Regulatory Commission. **SEE PLAINTIFFS' EXHIBIT F.**

60.    The Commission has issued only one license in its existence: the one granted to operate Minto Money.

61.    The Minto Financial Services Licensing & Regulatory Commission was created immediately before issuing this lone license.

62.    The Commission places no restrictions on interest rates charged to consumers, unlike Alaska state law, which limits payday loans to $500 and caps fees at $75 for such loans.

63.    Thin Elk is an attorney who previously lived in Omaha, Nebraska, and formerly practiced law with Fredericks Peebles & Morgan LLP, a law firm with a significant practice devoted to, per its website, "PROTECTING Tribal Sovereignty." He is now the owner of Thin Elk Law in Green Bay, Wisconsin, where he resides.

64.    Upon information and belief, Thin Elk is not a member of the Minto Tribe; rather, he is an enrolled member of the Sioux Tribe of South Dakota – located thousands of miles from Alaska.

65.    Thin Elk bills himself as an expert in "rent-a-tribe" matters, an arrangement where non-tribal entities control and operate a lending operation but

present a Native American tribe façade as the straw owner to claim tribal sovereign immunity as a defense to any prosecution.

66.    For example, Thin Elk was a speaker at a Tribal Employment Rights & Law Conference in April 2014 in Prior Lake, Minnesota. The program for the seminar summarized his speech as "Structuring the system: Essential elements for workable Tribal codes; selecting or creating effective grievance and dispute resolution bodies and processes; special considerations for partnering with non-Tribal entities for commercial enterprises." **SEE PLAINTIFFS' EXHIBIT G.**

67.    Thin Elk thus claims to be an expert in setting up rent-a-tribe agreements with non-tribal investors.

68.    Minto Money operates under such a "rent-a-tribe" scheme. The primary function of the Minto Tribe is to appear, on paper, as owning the lending operation so that the true non-tribal lender may use the specter of sovereign immunity as a way to ward off the consumers who they victimize, as well as state and federal regulatory authorities.

69.    Despite the Minto Tribe's minimal involvement, upon information and belief, all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

70.    One such individual is Isaacson, a past president of Credit Services, Inc., which was an affiliate of Trans Union, LLC.

71.    Isaacson was born in 1957 in Seattle, Washington, and was not born a member of the Minto Tribe.

72.    Isaacson currently lives in North Pole, Alaska, about 12 miles south of Fairbanks.

73.    As part of the rent-a-tribe scheme, Isaacson, via MDC, obtains credit reports in the name of Minto Money.

74.    Isaacson then contracts with other non-tribal members who perform underwriting analytics, customer service, collection duties, and all other related business functions.

75.    On information and belief, MDC employs no members of the Minto Tribe.

76.    BEDCO, the purported parent company of Minto Financial, is also controlled by Isaacson.

77.    Domain Name Registration records show that BEDCO's only website, www.bedco.us, is registered to Isaacson – not the Minto Tribe. **SEE PLAINTIFFS' EXHIBIT H.**

78.    When aggrieved consumers complain about Minto Money to consumer advocacy organizations such as the Better Business Bureau ("**BBB**"),

Isaacson responds *personally* to the complaints, identifying himself as the "General Manager" of Minto Financial. **SEE PLAINTIFFS' EXHIBIT I.**

79.      Isaacson, apparently without any oversight from the tribe, often makes adjustments to the interest rates charged by Minto Money to consumers who complain of loansharking.

80.      Minto Money claims to operate a lending enterprise making millions of dollars of consumer loans to consumers nationwide, from offices located at 205 Lakeview Dr., Suite 7, Minto, AK 99758.

81.      Despite the suite number designation, the building located at 205 Lakeview Drive does not contain any offices divided into suites.

82.      The building is used for school and senior lunch programs, community meetings, and village council operations.

83.      No call center, data center, or offices relating to any lending enterprise are found at this address.

84.      The web server from which mintomoney.com operates has an IP address of 35.192.114.177, which corresponds to a physical location in Virginia. **SEE PLAINTIFFS' EXHIBIT J.**

85.      Indeed, the idea that any company relying on e-commerce to facilitate large numbers of transactions at 205 Lakeview Drive in Minto is dubious, at best, since the area lacks high-speed internet service providers, offering only DSL service at speeds of just 2 megabits per second.

## Minto Money Operates from Kansas, Not Alaska

86.     Calls to the only customer service phone number listed on Minto Money's website, 844-446-4686, were answered by a non-tribal employee working at a call center in Overland Park, Kansas.

87.     The non-tribal employee identified himself as "Kevin" and confirmed that no call center or business operations existed in Alaska.

88.     Upon information and belief, no members of the Minto Tribe live in the Overland Park, Kansas, area.

89.     The Minto Tribe has no substantive involvement in the operation of Minto Money. Working capital to fund loans is provided by Isaacson and his investors and calls are taken by Isaacson's contractors in Kansas, thousands of miles away from the Minto Village.

90.     The Minto Tribe's Financial Services Licensing & Regulatory Commission is a paper-thin veneer established in an attempt to create the false impression that the tribe is, somehow, involved in the lending business.

91.     Similarly, the Commissioner – Thin Elk – is not a member of the Minto Tribe, but an attorney who bills himself as an expert in advising Native American tribes how to rent out the appearance of sovereign immunity for profit.

92.     Isaacson and the other non-tribal investors receive the vast majority of the payday loan profits, while the Minto Tribe receives a tiny fraction of overall revenue, about 2%, for playing the role of straw owner of the business.

93.     Isaacson, through his ownership of BEDCO's website and by virtue of his control of all services essential to issuing and collecting Minto Money's loans, actually controls Minto Money.

94.     Each of the Lending Defendants receives a portion of the proceeds collected from Minto Money's loans, including Plaintiffs' loans, for their role in the lending enterprise.

95.     BEDCO and Minto Financial receive a portion of loan proceeds for providing the veneer of tribal ownership, whereas Isaacson and MDC receive proceeds for conducting the day-to-day operations of Minto Money, including pulling credit reports, directing collection, and servicing the loans.

**Lender Defendants Rely on Unenforceable Delegation to Arbitration**

96.     The Lender Defendants, in furtherance of their efforts to avoid any liability under state law, rely on arbitration provisions found within each loan issued by Minto Money, including those loans issued to Plaintiffs.

97.     Each of Minto Money's loans states:

**GOVERNING LAW:** The laws of the Tribe and applicable federal law will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal law, and in the event of a bona fide dispute between you and us, Tribal law and applicable federal law shall exclusively apply to such dispute.

98.     Minto Money's loans then provide a dispute resolution mechanism whereby any "dispute" shall first be brought to the attention of Minto Financial's "management," in writing, to customerservice@mintomoney.com.

99.     The loan agreements then state, "If the dispute is not resolved to your satisfaction, you and we agree that we shall arbitrate that dispute in accordance with the terms of the Arbitration Provision, described below."

100.    Included within the "disputes" required to be arbitrated under the Arbitration Provision are all "state law claims" and "all claims based upon a violation of any state … constitution, statue or regulation." However, while the arbitration provision requires arbitration of state law claims, the "GOVERNING LAW" provision specifically prohibits the arbitrator from adjudicating any state law claims or any consideration of state law for any purpose.

101.    Such "disputes" also include a dispute as to whether the arbitration agreement is enforceable.  The loans thus by their terms, "delegate" the issue of arbitrability to an arbitrator and away from a court of law.

102.    Once the dispute is delegated to an arbitrator, the arbitrator only applies "applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA") and applicable statutes of limitation, and shall honor claims of privilege recognized at law."

103.    This mechanism leaves a consumer with no means to resolve any dispute raised pursuant to *state law* – including the issue of arbitrability.

104.    However, as no general body of federal contract law exists, and the arbitrator is not permitted to apply state law, including state principles of contract law, Minto Money's delegation clause is unworkable and unenforceable.

105.    The delegation clause is also unworkable, unconscionable and contrary to the FAA because it denies borrowers their state law rights to seek invalidation of the entire loan agreement, including the arbitration clause.

106.    Therefore, while the FAA requires application of "ordinary state-law principles that govern the formation of contracts," the delegation clause prohibits application of state law which would otherwise render the entire agreement, including the arbitration clause, invalid.

### TrueAccord's Collection Efforts

107.    In or around December 2020, Minto Money placed, transferred, or otherwise forwarded Mr. Holte's remaining balance to TrueAccord for collection.

108.    Shortly thereafter, TrueAccord began emailing Mr. Holte, attempting to collect the Minto Money loan.

109.    TrueAccord alleged in its collection emails that $1,111.36 was owed by Mr. Holte.

110.    TrueAccord thus falsely represented that the debt was enforceable against Mr. Holte, and that TrueAccord had the legal right to collect such debt.

111.    This $1,111.36 represented only usurious interest and fees, as Mr. Holte had already paid back the original principal amount of the loan more than three times over.

112.    At no point did TrueAccord disclose that Mr. Holte's Loan was null, void, and unenforceable against Mr. Holte under Florida law.

113.    As a result of TrueAccord's collection efforts, Mr. Holte made two payments to TrueAccord, of $259.32 each, on December 30, 2020, and January 26, 2021. **SEE PLAINTIFFS' EXHIBIT K.**

114.    TrueAccord continued to email Mr. Holte after he made the payments.

115.    On May 17, 2021, TrueAccord emailed Mr. Holte, stating, "I'm sure we can help you resolve your outstanding balance with Minto Money if you just work with us." **SEE PLAINTIFFS' EXHIBIT L.**

116.    At no point in any of its emails did TrueAccord disclose that Florida law prevents Mr. Holte from being sued for the Debt, as the underlying loan was void.

117.    TrueAccord collects debts for numerous payday lenders, many of which falsely claim to be owned by various Native American tribes and which charge interest in excess of that permitted by Florida law.

118.    TrueAccord has been sued multiple times for its involvement in the collection of illegal payday loan debts but continues to accept new debts from online payday lenders, despite knowing the illegal provenance of their accounts.

119.    TrueAccord's emails to Mr. Holte were *Communications* as defined by the FDCPA, 15 U.S.C. § 1692a(2), and the FCCPA, Section 559.55(2), Florida Statutes.

120.     TrueAccord's emails to Mr. Holte were in connection with the collection of the Debt.

121.    Plaintiffs and the class members were injured economically as a result of Defendants' conduct and are entitled to damages as set forth in each Count below, which include any interest, fees, or other sums collected by Defendants.

## CLASS ALLEGATIONS

### The Lender Defendants National Class

122.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

123.    Plaintiffs bring this action on behalf of themselves and all other similarly situated. All allegations herein are based on information and belief, except for those allegations that pertain to Plaintiffs. Plaintiffs' information and belief are based on, *inter alia*, the investigation conducted to date by Plaintiffs and their counsel. Each allegation in this consumer complaint either has evidentiary

support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

124.    Pursuant to Rule 23(b)(2), (b)(3) and/or (b)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class of which they are members (the "**Lender Defendants National Class**"), initially defined as:

> **All consumers: (1) located in any state other than Delaware, Missouri, Utah, or Nevada; (2) who took out a loan from Minto Money; and (3) who were the subject of collection or attempted collection by any of the Lender Defendants.**

125.    Excluded from the Lender Defendants National Class are the Defendants and any of their officers, directors, and employees.  Plaintiffs reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

126.    Plaintiffs reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

127.    Plaintiffs reserve the right to redefine the Lender Defendants National Class and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

128.    **Numerosity.  Fed R. Civ. P. 23(a)(1).** The members of the Lender Defendants National Class are so numerous that joinder of all of them is impractical. Class members are spread across the United States. Although the

precise number of members of the Lender Defendants National Class is presently unknown to Plaintiffs, on information and belief, there are at least hundreds if not thousands of members. Additionally, the names and addresses of members of the Lender Defendants National Class are identifiable through documents and business records maintained by the Lender Defendants, and the class members may be notified of the pendency of this action by published or mailed notice.

129.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the Lender Defendants National Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Lender Defendants constitute an "enterprise" as defined by 18 U.S.C. § 1961(4); (b) whether the activities of the Lender Defendants or the enterprise affected interstate commerce; (c) whether loans made to members of the class by Minto Money amount to an "unlawful debt" as defined by 18 U.S.C. § 1961(6); (d) whether the Lender Defendants received income derived from the collection of an unlawful debt; (e) whether the Lender Defendants used or invested the part of that income to acquire an interest in, to establish, or to operate the enterprise; and (f) whether Plaintiffs and the Class members were harmed economically by each of the Lender Defendants.

130.   **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of each Class member, which all arise from similar operative facts and

are based upon the same or substantially similar legal theories. Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class.

131.    **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the Class and will fairly and properly protect the interests of the Class. Plaintiffs have retained experienced counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including RICO. Plaintiffs' counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

132.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Lender Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO and the CRCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation

presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Lender Defendants' conduct.

133.   **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Plaintiffs and the class members. Plaintiffs and the putative class seek an injunction prohibiting the Lender Defendants from continued collection of these illegal loans; prohibiting the Lender Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Lender Defendant that has engaged in any enterprise pled herein.

<u>**The TrueAccord Class**</u>

134.   Additionally, pursuant to Rule 23(b)(2), (b)(3) and/or (b)(4) of the Federal Rules of Civil Procedure, Plaintiff Holte brings this action for himself and on behalf of a class of which he is a member (the "**TrueAccord Class**"), initially defined as:

> **All consumers: (1) located in any state other than Delaware, Missouri, Utah or Nevada; (2) who took out a loan from Minto Money for personal, family, or household purposes; and (3) who were the subject of collection or attempted collection by TrueAccord.**

135.   Excluded from the TrueAccord Class are the Defendants and any of their officers, directors, and employees.  Plaintiffs reserve the right to modify or

amend the Class definition before the Court determines whether certification is appropriate.

136.   Plaintiffs reserve the right to redefine the TrueAccord Class and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

137.   **Numerosity.  Fed R. Civ. P. 23(a)(1).** The TrueAccord Class members are so numerous that joinder of all of them is impractical. TrueAccord Class members are spread across the United States. Although the precise number of Class members is presently unknown to Plaintiffs, on information and belief, there are at least hundreds if not thousands of members. Additionally, the names and addresses of potential Class members are identifiable through documents and business records maintained by the Defendants, and the class members may be notified of the pendency of this action by published or mailed notice.

138.   **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the TrueAccord Class which predominate over questions affecting any individual class member.  Specifically, these common questions include, without limitation: (a) whether TrueAccord is a debt collector; (b) whether the debts constitute a consumer debt; (c) whether TrueAccord violated § 1692f of the FDCPA by attempting to collect debts which were unenforceable; (d) whether TrueAccord, by virtue of acting as collection agent on behalf of the Lender Defendants, together

with the Lender Defendants, constitutes an "enterprise" as defined by 18 U.S.C. § 1961(4); (e) whether the activities of the enterprise affected interstate commerce; (f) whether loans made to members of the class by Minto Money amount to an "unlawful debt" as defined by 18 U.S.C. § 1961(6); (g) whether TrueAccord received income derived from the collection of an unlawful debt; (h) whether TrueAccord used or invested the part of that income to acquire an interest in, to establish, or to operate the enterprise; and (i) whether Plaintiff(s) and the class members were harmed economically by TrueAccord.

139.   **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff Holte's claims are typical of the claims of each TrueAccord Class member, which all arise from similar operative facts and are based upon the same or substantially similar legal theories. Plaintiff Holte is entitled to relief under the same causes of action as the other members of the putative class.

140.   **Adequacy of Class Representation.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff Holte is an adequate representative of the TrueAccord Class and will fairly and properly protect the interests of the TrueAccord Class. Plaintiff Holte has retained experienced counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including RICO and the FDCPA. Plaintiffs' counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff Holte and his counsel will fairly and adequately protect the interests of members of the TrueAccord Class.

141. **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the TrueAccord Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO, the CRCPA, the FCCPA and the FDCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by TrueAccord's conduct.

142. **Injunctive Relief Appropriate for the TrueAccord Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Plaintiffs and the class members. Plaintiff Holte and the putative class seek an injunction prohibiting TrueAccord from continued unlawful conduct alleged herein.

## The Florida Lender Defendants Class

143.    Additionally, pursuant to Rule 23(b)(2), (b)(3) and/or (b)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class of which they are members (the "**Florida Lender Defendants Class**"), initially defined as:

> **All consumers: (1) located in Florida; (2) who took out a loan from Minto Money; and (3) who were the subject of collection or attempted collection by any of the Lender Defendants.**

144.    Excluded from the Florida Lender Defendants Class are Defendants and any of their officers, directors, and employees.  Plaintiffs reserve the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

145.    Plaintiffs reserve the right to redefine the Florida Lender Defendants Class and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

146.    **Numerosity.  Fed R. Civ. P. 23(a)(1).** The Florida Lender Defendants Class members are so numerous that joinder of all of them is impractical.  Florida Lender Defendants Class members are spread across the state of Florida.  Although the precise number of Florida Lender Defendants Class members is presently unknown to Plaintiffs, on information and belief, there are at least hundreds if not thousands of members. Additionally, the names and addresses of Florida Lender Defendants Class members are identifiable through documents

and business records maintained by the Defendants, and the class members may be notified of the pendency of this action by published or mailed notice.

147. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Florida Lender Defendants Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants constitute an "enterprise" as defined by Fla. Stat. § 772.102(3); (b) whether loans made to members of the class by Minto Money amount to an "unlawful debt" as defined by Fla. Stat. §772.102(2)(a)(3); (c) whether the Defendants received income derived from the collection of an unlawful debt; (d) whether the Defendants used or invested the part of that income to acquire an interest in, to establish, or to operate the enterprise; (e) whether Defendants violated § 559.72(9) of the FCCPA by attempting to enforce a debt which the Defendants knew was not enforceable; (f) whether Defendants violated § 559.72(9) of the FCCPA by asserting a legal right which did not exist; and (g) whether Plaintiff(s) and the class members were harmed economically by each of the Defendants.

148. **Typicality.  Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each Florida Lender Defendants Class member, which all arise from similar operative facts and are based upon the same or substantially similar legal

theories. Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class.

149. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the Class and will fairly and properly protect the interests of the Class. Plaintiffs have retained experienced counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including CRCPA and the FCCPA. Plaintiffs' counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Florida Lender Defendants Class.

150. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Florida Lender Defendants Class members predominate over questions affecting only individual members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the CRCPA and the FCCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

151.    **Injunctive Relief Appropriate for the Florida Lender Defendants Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Plaintiffs and the class members. Plaintiffs and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans; prohibiting the Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

## The Florida TrueAccord Class

152.    Additionally, pursuant to Rule 23(b)(2), (b)(3) and/or (b)(4) of the Federal Rules of Civil Procedure, Plaintiff Holte brings this action for himself and on behalf of a class of which he is a member (the "**Florida TrueAccord Class**"), initially defined as:

> **All consumers: (1) located in Florida; (2) who took out a loan from Minto Money; and (3) who were the subject of collection or attempted collection of such loan by TrueAccord.**

153.    Excluded from the Florida TrueAccord Class are Defendants and any of their officers, directors, and employees.  Plaintiffs reserve the right to modify or

amend the Class definition before the Court determines whether certification is appropriate.

154.   Plaintiffs reserve the right to redefine the Florida TrueAccord Sub-Class and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

155.   **Numerosity.   Fed R. Civ. P. 23(a)(1).** The members of the Florida TrueAccord Class are so numerous that joinder of all of them is impractical. Member of the Florida TrueAccord Class are spread across the state of Florida. Although the precise number of members of the Florida TrueAccord Class is presently unknown to Plaintiffs, on information and belief, there are at least hundreds if not thousands of members. Additionally, the names and addresses of members of the Florida TrueAccord Class are identifiable through documents and business records maintained by the Defendants, and the class members may be notified of the pendency of this action by published or mailed notice.

156.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**  There are questions of law and fact that are common to the Florida Lender Defendants Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether TrueAccord conspired with others (including but not limited to their co-Defendants) to violate the CRCPA; (b) whether TrueAccord and the Lender Defendants constitute an "enterprise" as

defined by Fla. Stat. § 772.102(3); (c) whether loans made to members of the class by Minto Money amount to an "unlawful debt" as defined by Fla. Stat. § 772.102(2)(a)(3); (d) whether TrueAccord received income derived from the collection of an unlawful debt; (e) whether TrueAccord used or invested the part of that income to acquire an interest in, to establish, or to operate the enterprise; (f) whether the debts constitute a consumer debt; (g) whether TrueAccord is a debt collector; (h) whether TrueAccord violated § 1692e of the FDCPA by attempting to collect debts which were enforceable; and (i) whether Plaintiff(s) and the class members were harmed economically by TrueAccord.

157.    **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff Holte's claims are typical of the claims of each Florida Lender Defendants Class member, which all arise from similar operative facts and are based upon the same or substantially similar legal theories. Plaintiff Holte is entitled to relief under the same causes of action as the other members of the putative class.

158.    **Adequacy of Class Representation.  Fed. R. Civ. P. 23(a)(4).**  Plaintiff Holte is an adequate representative of the Florida TrueAccord Class and will fairly and properly protect the interests of the Class. Plaintiffs have retained experienced counsel who have litigated well over one thousand consumer cases under consumer protection statutes, including CRCPA and the FCCPA. Plaintiffs' counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff Holte and his counsel will fairly and

adequately protect the interests of members of the Florida Lender Defendants Class.

159.    **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Florida TrueAccord Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. TrueAccord's conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the CRCPA and the FCCPA. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by TrueAccord's conduct.

160.    **Injunctive Relief Appropriate for the Florida TrueAccord Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Plaintiffs and the class members. Plaintiff Holte and the putative class seek an injunction prohibiting TrueAccord from continued collection of these illegal loans.

## COUNT I
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(a)
### (Class Claim on behalf of the Lender Defendants National Class Against the Lender Defendants)

161.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

162.    The Lender Defendants, through their joint operation and control of Minto Money, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

163.    The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

164.    The Lender Defendants utilized the internet, telephone and mail to reach across state lines in the operation of Minto Money, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from consumer bank accounts.

165.    As alleged above, the Lender Defendants each received income derived directly and indirectly from the collection of unlawful debts.

166.    The Lender Defendants each utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

167.   Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT II**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(b)**
**(Class Claim on behalf of the Lender Defendants National Class Against the Lender Defendants)**

168.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

169.   The Lender Defendants, through their joint operation and control of Minto Money, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

170.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

171.   The Lender Defendants utilized the internet, telephone and mail to reach across state lines in the operation of Minto Money, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from consumer bank accounts.

172.   As alleged above, the Lender Defendants each received income derived directly and indirectly from the collection of unlawful debts.

173.   The Lender Defendants each utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

174.   Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT III**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)**
**(Class Claim on behalf of the Lender Defendants National Class Against the Lender Defendants)**

175.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

176.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

177.   The Lender Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

178.   The Lender Defendants' participation in the enterprise violated § 1962(c) of RICO and caused Plaintiffs to repay amounts on unlawful loans.

179.   Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT IV**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)**
**(Class Claim on behalf of the Lender Defendants National Class Against the Lender Defendants)**

180.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

181.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

182.   The Lender Defendants violated § 1962(d) of RICO by conspiring with each other, and other persons, to issue and collect unlawful debts through Minto Money.

183.   The Lender Defendants each took actions in furtherance of this conspiracy.  For example, at various times, the Lender Defendants have: (a) issued a loan to Plaintiffs and the Class members; (b) requested and obtained consumer credit reports regarding potential borrowers; (c) initiated ACH deposits and withdrawals to the Class members' bank accounts; (d) attempted collection of a Minto Money loan through a call to the borrower; (e) claimed ownership of Minto Money to provide a guise of tribal ownership.

184.    Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT V**
**VIOLATIONS OF THE FCCPA, FLA. STAT. § 559.72(9)**
**(Class Claim on behalf of the Florida Lender Defendants Class and the Florida TrueAccord Class Against All Defendants)**

185.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

186.    The loans issued by Minto Money to Plaintiffs and the Class each charged an interest rate far in excess of the enforceable rate under Florida law and, thus, the loans are unenforceable in Florida.

187.    The Defendants violated § 559.72(9) of the FCCPA by attempting to enforce the loans issued by Minto Money, and by asserting the legal right to do so, when they collected, and attempted collection of the loans via ACH withdrawals, emails, and calls to Plaintiffs and the Class.

188.    The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiffs and the Class, and profiting from it.

189.    The Defendants each knew of the illegal nature of the loans, as TrueAccord has had multiple prior lawsuits filed against it for substantially

similar collection attempts and the Lender Defendants have gone to great lengths to attempt to avoid Florida law.

190.   Accordingly, the Defendants are jointly and severally liable to Plaintiffs and the putative Class members for their actual damages, statutory damages of up to $1000.00, punitive damages, costs, and attorney's fees pursuant to Fla. Stat. § 559.77.

**COUNT VI**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e**
**(Class Claim on behalf of the TrueAccord Class Against TrueAccord Only)**

191.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

192.   The loans issued by Minto Money to Mr. Holte and the Class each charged an interest rate far in excess of the enforceable rate under applicable state law and, thus, the loans are unenforceable.

193.   TrueAccord violated § 1692e of the FDCPA by using false and deceptive representations in connection with the collection of a debt, including by indicating to Mr. Holte and the Class that they owed amounts that they did not owe, and deceptively labeling the debts as though they were legal, valid, and enforceable when they were not.

194.   Mr. Holte and the Class suffered actual damages in the form of payments made as a result of TrueAccord's violations of § 1692e.

195.     Accordingly, TrueAccord is liable to Mr. Holte and the putative Class members for their actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT VII
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f
## (Class Claim on behalf of the TrueAccord Class Against TrueAccord Only)

196.     Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

197.     The loans issued by Minto Money to Mr. Holte and the Class each charged an interest rate far in excess of the enforceable rate under applicable state law and, thus, the loans are unenforceable.

198.     TrueAccord violated § 1692f of the FDCPA by attempting to collect amounts which were not permitted by law. Specifically, TrueAccord attempted to collect loans issued by Minto Money which were unenforceable and illegal due to the application of interest rates well in excess of applicable state law.

199.     Mr. Holte and the Class suffered actual damages in the form of payments made as a result of TrueAccord's violations of § 1692f.

200.     Accordingly, TrueAccord is liable to Mr. Holte and the putative Class members for their actual damages, statutory damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT VIII
### VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(1)
**(Class Claim on behalf of the Florida Lender Defendants Class Against the Lender Defendants)**

201.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

202.   The Lender Defendants, through their joint operation and control of Minto Money, constitute an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

203.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

204.   The Lender Defendants utilized the internet, telephone and mail to reach across state lines and into the state of Florida in the operation of Minto Money, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from consumer bank accounts in Florida.

205.   As alleged above, the Lender Defendants each received income derived directly and indirectly from the collection of unlawful debts.

206.   The Lender Defendants each utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

207.    Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**COUNT IX**
**VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(2)**
**(Class Claim on behalf of the Florida Lender Defendants Class Against the Lender Defendants)**

208.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

209.    The Lender Defendants, through their joint operation and control of Minto Money, constitute an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

210.    The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

211.    The Lender Defendants utilized the internet, telephone and mail to reach across state lines and into the state of Florida in the operation of Minto Money, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from consumer bank accounts in Florida.

212.    As alleged above, the Lender Defendants each received income derived directly and indirectly from the collection of unlawful debts.

213.   The Lender Defendants each utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

214.   Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

<u>**COUNT X**</u>
**VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(3)**
**(Class Claim on behalf of the Florida Lender Defendants Class Against the Lender Defendants)**

215.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

216.   The Lender Defendants, through their joint operation and control of Minto Money, constitute an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

217.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

218.   The Lender Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

219.    The Lender Defendants utilized the internet, telephone and mail to reach across state lines and into the state of Florida in the operation of Minto Money, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from consumer bank accounts in Florida.

220.    As alleged above, the Lender Defendants each received income derived directly and indirectly from the collection of unlawful debts.

221.    Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT XI
### VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(4)
**(Class Claim on behalf of the Florida Lender Defendants Class Against the Lender Defendants)**

222.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

223.    The Lender Defendants, through their joint operation and control of Minto Money, constitute an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

224.    The Lender Defendants utilized the internet, telephone and mail to reach across state lines and into the state of Florida in the operation of Minto Money, including through collection calls, credit reporting, and ACH withdrawals and deposits to and from consumer bank accounts in Florida.

225.    The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

226.    The Lender Defendants violated Fla. Stat. § 772.103(4) by conspiring with each other, and other persons, to issue and collect unlawful debts through Minto Money.

227.    The Lender Defendants each took actions in furtherance of this conspiracy.  For example, at various times, the Lender Defendants have: (a) issued a loan to Plaintiffs and the Class members; (b) requested and obtained consumer credit reports regarding potential borrowers; (c) initiated ACH deposits and withdrawals to the Class members' bank accounts; (d) attempted collection of a Minto Money loan through a call to the borrower; (e) claimed ownership of Minto Money to provide a guise of tribal ownership.

228.    Accordingly, the Lender Defendants are jointly and severally liable to Plaintiffs and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT XII
### VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(1)
### (Class Claim on behalf of the Florida TrueAccord Class Against TrueAccord)

229.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

230.  TrueAccord, through their collection of usurious loans as agent for the Lender Defendants, together with the Lender Defendants, constitutes an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

231.  The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

232.  TrueAccord utilized the internet, telephone and mail to reach across state lines and into the State of Florida fir its collection of unlawful debt issued by Minto Money, including through collection calls, collection emails, credit reporting, and ACH withdrawals from consumer bank accounts in Florida.

233.  As alleged above, TrueAccord received income derived directly and indirectly from the collection of unlawful debts.

234.  TrueAccord utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

235.  Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT XIII
## VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(2)
### (Class Claim on behalf of the Florida TrueAccord Class Against TrueAccord)

236.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

237.   TrueAccord, through their collection of usurious loans as agent for the Lender Defendants, together with the Lender Defendants, constitutes an "enterprise" under the CRCPA, Fla. Stat. § 772.102(3).

238.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

239.   TrueAccord utilized the internet, telephone and mail to reach across state lines and into the State of Florida fir its collection of unlawful debt issued by Minto Money, including through collection calls, collection emails, credit reporting, and ACH withdrawals from consumer bank accounts in Florida.

240.   As alleged above, TrueAccord received income derived directly and indirectly from the collection of unlawful debts.

241.   TrueAccord utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

242.     Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**COUNT XIV**
**VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(3)**
**(Class Claim on behalf of the Florida TrueAccord Class Against TrueAccord)**

243.     Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

244.     The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

245.     TrueAccord associated with the Lender Defendants and participated in the affairs of this enterprise, which existed for the purpose of collection of unlawful debt.

246.     TrueAccord's participation in the enterprise violated Fla. Stat. § 772.103(3) and caused Plaintiffs to repay amounts on unlawful loans.

247.     Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT XV
### VIOLATIONS OF CRCPA, FLA. STAT. § 772.103(4)
### (Class Claim on behalf of the Florida TrueAccord Class Against TrueAccord)

248.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

249.    The loans issued by Minto Money to the Class each charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3), and, thus, the loans constitute "unlawful debt" under the CRCPA, Fla. Stat. § 772.102(2)(a)(3).

250.    TrueAccord violated Fla. Stat. § 772.103(4) by conspiring with the Lender Defendants, and other persons, to collect unlawful debts through Minto Money

251.    TrueAccord took action in furtherance of this conspiracy, including sending collection letters and emails to borrowers.

252.    Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT XVI
### VIOLATIONS OF RICO, 18 U.S.C. § 1962(a)
### (Class Claim on behalf of the TrueAccord Class Against TrueAccord)

253.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

254.    TrueAccord, through their collection of usurious loans as agent for the Lender Defendants, together with the Lender Defendants, constitutes an "enterprise" under RICO, 18 U.S.C. § 1961(4).

255.    The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

256.    TrueAccord utilized the internet, telephone and mail to reach across state lines in collecting the loans issued by Minto Money.

257.    TrueAccord received income derived directly from the collection of unlawful debts.

258.    TrueAccord utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

259.    Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT XVII
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(b)
### (Class Claim on behalf of the TrueAccord Class Against TrueAccord)

260.    Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

261.   TrueAccord, through their collection of usurious loans as agent for the Lender Defendants, together with the Lender Defendants, constitutes an "enterprise" under RICO, 18 U.S.C. § 1961(4).

262.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

263.   TrueAccord utilized the internet, telephone and mail to reach across state lines in collecting the loans issued by Minto Money.

264.   TrueAccord received income derived directly from the collection of unlawful debts.

265.   TrueAccord utilized a portion of the income derived from the collection of unlawful debts to further establish and assist the operations of the enterprise.

266.   Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT XVIII
### VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)
**(Class Claim on behalf of the TrueAccord Class Against TrueAccord)**

267.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

268.   TrueAccord associated with the enterprise and participated in the affairs of the enterprise, directly through the collection of an unlawful debt.

269.   TrueAccord's participation in the enterprise violated § 1962(c) of RICO and caused Mr. Holte and the putative class to repay amounts on unlawful loans.

270.   Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**<u>COUNT XIX</u>**
**VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)**
**(Class Claim on behalf of the TrueAccord Class Against TrueAccord)**

271.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

272.   The loans issued by Minto Money to the Class each charged an interest rate far in excess of twice the enforceable rate under applicable state law and, thus, the loans constitute "unlawful debt" under RICO, 18 U.S.C. § 1961(6).

273.   TrueAccord violated § 1962(d) of RICO by conspiring with the Lender Defendants, and other persons, to collect unlawful debts issued through Minto Money.

274.   TrueAccord took action in furtherance of this conspiracy, including sending collection letters and emails to borrowers.

275.   Accordingly, TrueAccord is liable to Mr. Holte and the putative class members for their actual damages, treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

**COUNT XX**
**UNJUST ENRICHMENT**
**(All Classes Against All Defendants)**

276.   Plaintiffs adopt and incorporate paragraphs 1 – 121 as if fully restated herein.

277.   The loans issued by Minto Money to Plaintiffs and the Class each charged an interest rate which rendered the loan void and unenforceable due to applicable state laws.

278.   Plaintiffs conferred a benefit on Defendants when they repaid the loans, as they had no obligation to do so and, therefore, Defendants were owed nothing.

279.   Defendants knew or should have known of the benefit; and Defendants have been unjustly enriched through their receipt of any amounts in connection with the unlawful loans such that it would be inequitable for Defendants to retain the money they received.

280.   Accordingly, on behalf of themselves and all other consumers similarly situated, Plaintiffs seek to recover from Defendants, jointly and severally, all amounts repaid on the Minto Money loan.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court enter judgment on behalf of

themselves and the classes they seek to represent against Defendants for:

A.   Certification for this matter to proceed as a class action;

B.   An award of actual, treble, punitive, and statutory damages as pled
herein;

C.   Injunctive relief as pled herein;

D.   An award of pre-judgment and post-judgment interest as provided
by law;

E.   An award of attorneys' fees, litigation expenses, and costs of suit;

F.   Such other relief as the Court deems just and proper.

Respectfully submitted this **November 29, 2021**, by:

**SERAPH LEGAL, P. A.**

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com

Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com

1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A      LinkedIn Profile of Doug Isaacson, Accessed May 16, 2020

B      Mr. Holte's Loan Agreement with Minto Money, Excerpt

C      Mr. Kidd's Loan Agreement with Minto Money, Excerpt

D      Mr. Holte's Payment History Regarding Minto Money Loan

E      Mr. Kidd's Payment History Regarding Minto Money Loan

F      Minto Financial's Lending License

G      Overview of Tribal Employment Rights & Law Conference, April 2014

H      Domain Name Registration for bedco.us, Record Date: December 19, 2018

I      Isaacson Responses to Consumer Complaints on BBB Regarding Minto Money

J      Physical Location for Servers of mintomoney.com

K      Mr. Holte's Payment Summary to TrueAccord Regarding Minto Money Loan

L      TrueAccord's Email to Mr. Holte, May 17, 2021